**ALLEN DISTRIBUTING, INC., dba Solar Window and The State Insurance Fund, Plaintiffs,**

**v.**

**The INDUSTRIAL COMMISSION of Utah and Terry Gene Lowe, Defendants.**

**No. 15822.**

Supreme Court of Utah.

Dec. 24, 1979.

M. David Eckersley and James R. Black of Black & Moore, Salt Lake City, for plaintiffs.

Robert B. Hansen, Atty. Gen., Robert J. Shaughnessy, Asst. Atty. Gen., Salt Lake City, for defendants.

STEWART, Justice:

This appeal by Allen Distributing, Inc., dba Solar Window, and the State Insurance Fund is from an order of the State Industrial Commission finding joint liability on the part of Solar Window and David Wharton, who subcontracted jobs from Solar Window, for workmen's compensation benefits payable to Terry Lowe for injuries sustained while working for Wharton. We affirm the order of the Commission.

This Court, in reviewing Industrial Commission orders, will not set aside an order unless it is contrary to law or unsupported by substantial evidence. *Duaine Brown Chevrolet Co. v. Industrial Commission,* 29 Utah 2d 478, 511 P.2d 743 (1973).

Solar Window admits that Lowe was its employee for compensation purposes while he was working on jobs contracted by Solar Window. It contends, however, that there was no contract of hire or general employment relationship between Solar Window and Lowe and thus no liability when Lowe was injured on a job that was not for Solar Window.

In order for Solar Window and its insurer to be liable for the payment of workmen's compensation benefits, it is necessary that Solar Window come within the provisions of § 35–1–42 U.C.A. (1953), as amended. This section states who is an employer subject to the workmen's compensation laws. It provides in part as follows:

> The following shall constitute employers subject to the provisions of this title:
>
> * * * * * *
>
> (2) Every person, firm and private corporation, including every public utility, having in service one or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any contract of hire,

> express or implied, oral or written, except agricultural laborers and domestic servants; . . . .
>
> The term "regularly" as herein used shall include all employments in the usual course of the trade, business, profession or occupation of the employer, whether continuous throughout the year or for only a portion of the year.
>
> Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and such work is a part of process in the trade or business of the employer, such contractor, and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer. . . .

Although the Commission did not expressly find a contract of hire, the Commission's findings do state that Lowe "obtained his job with Solar Window" upon referral by Job Service, indicating there was an employment relationship between Solar Window and Lowe.

The findings show that Lowe was referred to Solar Window by an employment agency. He first contacted a Mr. Allen, an officer of Solar Window, who said Dave Wharton would discuss employment with him. Following an interview on the premises of Solar Window with Wharton, Lowe was hired and put to work assisting in the installation of siding and other products manufactured by Solar Window. Each work day Lowe reported to the Solar Window address and then accompanied Wharton to the location of the day's work. Four jobs were completed prior to his injury. Lowe was paid on an hourly basis at the completion of each job. Lowe received all his paychecks from Allen at the Solar Window office. Solar Window made all the required payroll deductions and paid all premiums for unemployment and workmen's compensation for Lowe, Wharton, and others employed by Wharton.

Solar Window's usual business included the contracting of siding installation jobs which Wharton carried out. Wharton was hired by Solar Window as a contractor or subcontractor and was paid by the job. The amounts paid to Wharton's men by Solar Window were deducted from the contractual price paid for the job by Solar Window. When Solar Window had no jobs for Wharton, he was free to do work independently. Wharton did not have workmen's compensation insurance coverage.

The Commission's findings state that the first three jobs Lowe completed were for Solar Window. The fourth job, however, had not been contracted by Solar Window. Although Lowe did not know it, Wharton was doing the job on his own. At the conclusion of the work, the owner of the premises offered to pay Lowe in cash. Lowe preferred receiving a check, so Wharton arranged for Allen to issue a paycheck for that job. The check reflected the usual employer deductions.

On the day of the injury, Lowe reported to work at Solar Window, picked up his paycheck, and then went to a new job site with Wharton. This job also was not a Solar Window job, but a job contracted for by Wharton independently. The work was similar to that done on other jobs for Solar Window. In the course of the work, Lowe fell from a scaffold and injured his shoulder.

The findings in this case indicate by direct implication the existence of a contract of hire between Solar Window and Lowe. Lowe had no reason to believe that Wharton or anyone other than Solar Window was his actual employer. Based on the circumstances of his employment, Lowe thought he was working for Solar Window at the time of the accident, and at that time he was doing the same type work that he had done when performing work on Solar Window jobs. He did not know that his work on the day of his accident or on any prior occasion was for Wharton and not for Solar Window. Wharton's testimony as to pay arrangements on the day of the accident indicates the lack of an obvious employer-

employee relationship reflecting a new contract of hire between himself and Lowe. Presumably Lowe expected to be paid by Allen in the usual manner. Wharton testified as follows:

Q. What was your arrangement with Mr. Lowe, so far as paying him for services that day?

A. There was an assumed relationship is all.

Q. What was that? What was your understanding?

A. That he would get paid for the day's work. That's all the arrangement we had about it.

Clearly, Lowe had not entered into a special employment contract with Wharton.

We hold that the Commission did not err in concluding that Lowe was entitled to rely upon the existence of the employer-employee relationship that had been established with Solar Window, as evidenced by the employment arrangements present in this case and that Lowe could look to Solar Window for compensation for the industrial accident in this case.

The parties have argued the applicability of the "lent employee" principle. We find it unnecessary to address that issue because, under the facts of this case, coverage is contemplated by the workmen's compensation statute for an employee injured in the circumstances presented here.

The order of the Commission is affirmed.

CROCKETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

HALL, Justice (dissenting):

I respectfully dissent, for I deem the order of the Commission to be not only contrary to law, but also unsupported by the evidence.

To my mind, the evidence clearly shows that Lowe was an employee of Solar Window (hereinafter Solar) only in the statutory sense,[1] i. e., when Wharton was working as a contractor on Solar projects. Wharton hired Lowe and testified that, "I told him that he would be working with me, at the rate that I established of his value to me, in installing the jobs." Lowe was paid on a project basis. He received four checks in a period of less than three weeks, May 13 to May 31, 1979, after each project was completed. Because of the statutorily imposed relationship between Lowe and Solar, it was proper for Lowe to be paid directly by Solar when working on Solar projects. As indicated by the findings of the administrative law judge, the single incident where Solar paid Lowe for a non-Solar project was when Lowe was offered cash by a customer. Lowe prevailed upon Wharton, who in turn prevailed upon Allen who reluctantly said, "Okay, I will give him a check. I will charge your Accounts Receivable and deduct it out of your [next] job." As for the job Lowe was working on when the accident occurred, Wharton testified, "Mr. Allen was not involved at all in the job . . . I intended to pay him [Lowe] out of the money from the scrap metal . . . . Nothing would be involved with Mr. Allen in any way." It is my opinion that Lowe was an employee of Solar only insofar as the relationship was statutorily imposed. Having so concluded, the theory of "lent-employee" as relied upon by the administrative law judge[2] has no application, inasmuch as Lowe was not an employee of Solar capable of being loaned.

Even assuming, arguendo, that Lowe was an *actual* employee of Solar, the case still should have been dismissed as against Solar on the facts presented. Any employee can independently contract to do outside work. Just because that outside work is of the same nature as one's usual work as an employee, does not mean, ipso facto, that he is working for his usual employer. Although Lowe testified that he thought he was working for Solar on the day in question, Wharton testified as follows:

Q. Had he been informed, or did you ever inform him, that this work was outside of the work for Solar Window?

1. U.C.A., 1953, 35-1-42.

2. The administrative law judge quoted from 1A A. Larson, Workmen's Compensation Law, § 48.10 at 8-211 (1973).

A. Yes, I mentioned—he may not have understood, or remembered—but I did say that it was a job on my own for a relative.

Solar neither knew about the independent project on May 31, nor benefited in any way from it.

To determine Solar's liability, one need only look to the facts. The undisputed fact that Lowe was not working for Solar *at the time of the accident* (regardless of who he thought he was working for) should be dispositive.[3]

I would set aside the order of the Commission as it pertains to Solar.

3. See *Bamberger Elec. R. Co. v. Industrial Commission,* 59 Utah 257, 203 P. 345 (1921).